**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
MARIE A. MCCRARY (State Bar No. 262670)
HAYLEY REYNOLDS (State Bar No. 306427)
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 271-6469
Facsimile:  (415) 449-6469

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRIS MINOR as an individual, on behalf of herself, the general public and those similarly situated,, | CASE NO. |
| Plaintiff, | CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; FALSE ADVERTISING; FRAUD, DECEIT, AND/OR MISREPRESENTATION; UNFAIR BUSINESS PRACTICES; AND UNJUST ENRICHMENT |
| v. | |
| FUEL FOR FIRE, INC. | |
| Defendant. | JURY TRIAL DEMANDED |

**INTRODUCTION**

1.     Plaintiff Minor by and through her counsel, brings this class action against Defendant Fuel for Fire, Inc., to seek redress for Defendant's deceptive practices in labeling and marketing its Fuel for Fire protein snack pouches.

2.     Consumers are increasingly health conscious and, as a result, many consumers seek foods high in protein to support weight loss, exercise, and general fitness, among other reasons.

3.     To capitalize on this trend, Defendant prominently labels its Fuel for Fire pouches as containing 7g, 10g, 11g, or 12g of protein per serving depending on the flavor.  Consumers, in turn, reasonably expect that each serving will provide the actual amount of protein that the label claims it will.

4.     In truth, however, Defendant's protein pouches do not contain the amount of protein that the label claims.  Based on amino acid content testing, Defendants' products contain approximately 25% less protein than claimed, meaning, for example, rather than having 12 grams of protein per serving, Defendant's product actually has only 9 grams.

5.     Further, Defendant's products are also misbranded. Parallel state and federal regulations require any product that makes a protein claim to include in the nutrition facts panel a percentage of the daily value of the protein in the product based on its amino acid content and digestibility score. Defendant's products prominently make protein content claims but fail to provide the required percent daily value of protein, which further obfuscates Defendant's misrepresentations about the amount of protein in its products.

6.     Defendant's misrepresentations and misbranding caused Plaintiff and members of the class to pay a price premium for the products.

**PARTIES**

7.     Sherris Minor ("Plaintiff") is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Pleasant Hill, California (Contra Costa County); Emeryville, California (Alameda County); or Oakland, California (Alameda, County).

8.     Defendant Fuel for Fire Inc. ("Defendant") is a corporation existing under the laws

of the State of Delaware, having its principal place of business in Massachusetts.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and at least one Plaintiff and Defendant are citizens of different states.

10.      The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendant within, affecting, and emanating from, the State of California. Defendant regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products provided to persons in the State of California. Defendant has engaged, and continues to engage, in substantial and continuous business practices in the State of California.

11.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of California, including within this District.

12.      In accordance with California Civil Code Section 1780(d), Plaintiff concurrently files herewith a declaration establishing that, at various times throughout the class period, she purchased Fuel for Fire pouches in Pleasant Hill, California; Emeryville, California; and Oakland, California.  (Plaintiff's declaration is attached hereto as Exhibit A.)

13.      Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

## SUBSTANTIVE ALLEGATIONS

14.      Defendant Fuel for Fire Inc. manufactures, distributes, markets, advertises, and sells protein snack pouches in the United States under the brand name "Fuel for Fire."  Defendant's packaging for the following varieties of protein pouches predominately, uniformly, and consistently state on the principal display panel of the product labels that they contain "12g Protein" per serving:

   a.  Strawberry Banana

   b.  Mixed Berry

15.     Defendant's packaging for the following varieties of protein pouches predominately, uniformly, and consistently state on the principal display panel of the product labels that they contain "11g Protein" per serving:

    c.  Coffee

16.     Defendant's packaging for the following varieties of protein pouches predominately, uniformly, and consistently state on the principal display panel of the product labels that they contain "10g Protein" per serving:

    d.  Tropical

    e.  Banana Cocoa

    f.  Sweet Potato Apple

    g.  Berry Acai [plant-based]

    h.  Mango Coconut [plant-based]

    i.  Chocolate Strawberry [plant-based]

17.     Defendant's packaging for the following varieties of protein pouches predominately, uniformly, and consistently state on the principal display panel of the product labels that they contain "7g Protein" per serving (with the products referenced in Paragraphs 14-17, referred to collectively herein as the "Products"):

    j.  Kids Strawberry Banana

    k.  Kids Tropical

    l.  Kids Mixed Berry

    m. Kids Banana Coconut

18.     The representation that the Products contain "7g Protein," "10g Protein," "11g Protein," and "12g Protein" per serving respectively, was uniformly communicated to Plaintiffs and every other person who purchased any of the Products in California.  The same or substantially similar product label has appeared on each respective product during the entirety of the Class Period in the general form of the following example:



19.     The protein content is again emphasized on the back of the product label, where it touts various "benefits of protein" including that it "promotes muscle recovery"; "strengthens immune system"; and "keeps you feeling full." The nutrition facts panel likewise repeats the protein content claims, although it fails to provide any referenced percent daily value of its protein content as state and federal regulations require. The back panel of the products have appeared consistently throughout the Class Period in the general form of the following example:



20.     As described in detail below, Defendant's advertising and labeling of the Products as containing "7g Protein," "10g Protein," "11g Protein," and "12g Protein" per serving respectively, is false, misleading, and intended to induce consumers to purchase the protein pouches at a premium price, while ultimately failing to meet consumer expectations. These representations deceive and mislead reasonable consumers into believing that a serving of the Products will contain the grams of protein as represented on the label, when in fact, protein content testing via amino acid analysis reveals that a serving contains approximately 25% fewer grams of protein than claimed.

**Consumer Demand for Protein**

21.     Many American consumers are health conscious and seek wholesome, natural foods to keep a healthy diet, so they routinely rely upon product label information when selecting and purchasing food items. This is especially true in the community of athletes, registered dietitians, and coaches, to which Fuel for Fire markets.

22.     Protein is found throughout the body—in muscle, bone, skin, hair, and virtually every other body part or tissue. The National Academy of Medicine recommends that adults get a minimum of .8 grams of protein for every kilogram of body weight per day, or just over 7 grams for every 20 pounds of body weight.[1] For a 140-pound person, that means about 50 grams of protein each day. For a 200-pound person, that means about 70 grams of protein each day.

23.     Athletes and fitness enthusiasts typically consume much higher amounts of protein each day; typically between 1 to 1.5 grams of protein for every pound of body weight.

24.     The health benefits of protein are just as important, if not more important, for children. Children are in a relative state of constant growth and rely on protein as the building block of muscle, bone, skin, hair, and virtually every other body part or tissue. The National Academies of Science recommends the following amounts of daily intake of protein based on age group: 1-3

---

[1] National Academies of Medicine. *Dietary Reference Intakes for Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids (Macronutrients)*.

years old: 13 g of protein per day; 4-8 years old: 19 g of protein per day; 9-13 years old:  34 g of protein per day.[2]

25.     Athletes, dieticians, and coaches are particularly concerned about incorporating protein into their diets both pre and post workout. Protein is the building block of muscles. Therefore, consumers trying to gain muscle seek to ensure their protein intake is sufficiently high to promote muscle growth and prevent muscle loss.

26.     Many studies report that consuming protein after exercise can aid recovery by reducing muscle damage and improving muscle performance.

27.     The health benefits of protein are well studied and wide ranging.  Scientific studies have confirmed that protein can assist in weight loss, reduce blood pressure, reduce cholesterol, and control for risk factors for cardiovascular diseases.

28.     Proteins are not a monolithic substance, but instead come in many varieties. Proteins are essentially chains of different amino acids, and different types of amino acids chained together in different ways will make different types of proteins. Further, the makeup of the protein that is ingested changes the function of the protein in the body, and certain types of proteins are more easily digested by humans than others.

29.     Typically, a "complete protein" is a protein that contains all nine essential amino acids.  An essential amino acid is one that the human body cannot produce on its own and must be obtained through diet. Essential amino acids may be measured by the Protein Digestibility Corrected Amino Acid Score ("PDCAAS"), which FDA regulations rely on for the calculation of Daily Reference Values ("DRV").  21 C.F.R. § 101.9(c)(7)(ii); FDA Food Labeling Guide, p.29, Question N. 22.

30.     The PDCAAS method requires the manufacturer to determine the amount of essential amino acids that the food contains and then multiply that number by humans' ability to digest the amino acid profile.

---

[2] *Id.*

31.     Because of the differences in benefits depending on the amino acid composition of a protein, the source of protein is important.  Whey protein is animal-based and contains all nine essential amino acids. Plant protein contains higher levels of antioxidants, but rarely contains all nine essential amino acids.

32.     Defendant uses both whey protein and plant-based proteins in its products.  Regarding its plant-based proteins, Defendant claims that its "proprietary blend of pea protein and brown rice protein constitutes a 'complete protein', providing [consumers] with all 9 essential amino acids the body needs."

**Federal and State Regulations Governing Food Labeling**

33.     The Food and Drug Administration regulates nutrition content labeling.  According to these regulations, "[a] statement of the corrected amount of protein per serving, as determined in paragraph (c)(7)(ii) of this section, calculated as a percentage of the RDI or DRV for protein, as appropriate, and expressed as a Percent of Daily Value . . . *shall be given if a protein claim is made for the product . . .*" 21 C.F.R. 101.9(c)(7)(i) (emphasis added).

34.     Although FDA guidance provides that a declaration of the DRV for protein is "not mandatory" in typical circumstances, that same guidance is equally clear that "[t]he percent of the DRV is required if a protein claim is made for the product."[3]

35.     Further, FDA regulations require the DRV to be calculated using amino acid analysis, more specifically the Protein Digestibility Corrected Amino Acid Score ("PDCAAS"). 21 C.F.R. § 101.9(c)(7)(ii); FDA Food Labeling Guide, p. 29, Question N.22.  The PDCAAS method does not calculate protein content by nitrogen combustion, which is otherwise permitted under 21 C.F.R. § 101.9(c)(7) for products that do not make protein content claims.[4]

36.     Accordingly, when a product makes a protein content claim, FDA regulations require manufacturers to calculate the amount of amino acids that the food contains and then multi-

---

[3] Guidance for Industry: A Food Labeling Guide ("FDA Food Labeling Guide") p. 29, Question N22, U.S. Food & Drug Administration, https://www.fda.gov/media/81606/download (last accessed February 18, 2020).

[4] Specifically, the regulation states that the grams of protein figure in the nutrition fact box "may be calculated on the basis of the factor of 6.25 times the nitrogen content of the food."

ply that amount by humans' ability to digest the amino acid profile to come up with a percent daily value.

37.     Identical federal and California laws regulate the content of labels on packaged food and require truthful, accurate information on the labels of packaged foods. The requirements of the federal Food, Drug & Cosmetic Act ("FDCA"), and its labeling regulations, including those set forth in 21 C.F.R. §§ 101, 102, were adopted by the California legislature in the Sherman Food Drug & Cosmetic Law (the "Sherman Law"). California Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state."). The federal laws and regulations discussed below are applicable nationwide to all sales of packaged food products. Additionally, no state imposes different requirements on the labeling of packaged food for sale in the United States.

38.     Under the FDCA, the term false has its usual meaning of "untruthful," while the term misleading is a term of art that covers labels that are technically true, but are likely to deceive consumers. Under the FDCA, if any single representation on the labeling is false or misleading, the entire food is misbranded, and no other statement in the labeling can cure a misleading statement.

39.     Further in addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations. See California Health & Safety Code § 110660 (misbranded if label is false and misleading); and California Health & Safety Code § 110705 (misbranded if words, statements and other information required by the Sherman Law are either missing or not sufficiently conspicuous).

40.     Under California law, a food product that is "misbranded" cannot legally be manufactured, advertised, distributed, sold, or possessed. Misbranded products have no economic value and are legally worthless.

41.     Representing that a protein pouch contains "7g Protein," "10g Protein," "11g Protein," and "12g Protein" per serving respectively, is a statement of fact, and use of these phrases

on the labels of packaged food is limited by the aforementioned misbranding laws and regulations.

**Defendant's Marketing and Labeling of its Protein Pouches Violates State and Federal Food Labeling Laws**

42.     Defendant's Products are unlawful, misbranded, and violate the Sherman Law, California Health & Safety Code § 110660, et seq., because the Products' labels state that each pouch contains "7g Protein," "10g Protein," "11g Protein," and "12g Protein" per serving respectively, when, in fact, amino acid content testing reveals that the Products contains approximately 25% fewer grams of protein than claimed.

43.     Further, Defendant makes protein content claims on the front of its packages and yet has left the Percent Daily Value column for protein in its nutrition facts panel completely blank.  Because Defendant made a protein content claim, it was statutorily obligated to calculate the protein content of its products via the amino analysis described above and to provide a percent daily value figure using the PDCAAS method. Defendant has failed to do so, and its Products are accordingly misbranded.

44.     Defendant's marketing, advertising, and sale of the Products violates the false advertising provisions of the Sherman Law (California Health & Safety Code § 110390, et. Seq.), including but not limited to:

a.   Section 110390, which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product;

b.   Section 110395, which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely or misleadingly advertised food; and

c.   Sections 110398 and 110400, which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised.

45.     Defendant's marketing, advertising, and sale of the Products violates the

misbranding provisions of the Sherman Law (California Health & Safety Code § 110660, *et. seq.*), including but not limited to:

    d.   Section 110665 (a food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in 21 U.S.C. Sec. 343(q));

    e.   Section 110705 (a food is misbranded if words, statements and other information required by the Sherman Law to appear food labeling is either missing or not sufficiently conspicuous);

    f.   Section 110760, which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded;

    g.   Section 110765, which makes it unlawful for any person to misbrand any food; and

    h.   Section 110770, which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.

46.    Defendant has violated 21 U.S.C. § 343(a), and the standards set by FDA regulations, including but not limited to 21 C.F.R. § 101.9(c)(7), which have been incorporated by reference in the Sherman Law, by failing to include on their product labels the nutritional information required by law.

47.    A reasonable consumer would expect that the Products contain what Defendant identifies them to contain on the product labels and that the labels would not be contrary to the policies or regulations of the State of California and/or the FDA. For example, a reasonable consumer would expect that when Defendant labels its Products as containing "12g Protein" per serving, the Products would contain 12 grams of protein per serving. However, based on amino acid content testing conducted by Plaintiff's counsel, Defendant's Products contain approximately 25% less protein per serving than claimed.

48.    Consumers lack the meaningful ability to test or independently ascertain the truthfulness of Defendant's food labeling claims, especially at the point of sale. Consumers would not know the true protein content of the Products merely by looking elsewhere on the product package. Its discovery requires investigation well beyond the grocery store aisle and knowledge of

food chemistry beyond that of the average consumer. An average consumer does not have the specialized knowledge necessary to ascertain that a serving of a protein pouch does not contain the number of grams that is represented on the label, and instead contains 25% fewer grams. That, combined with Defendant's active concealment in representing that the Products contain "7g Protein," "10g Protein," "11g Protein," and "12g Protein" per serving respectively, and not disclosing otherwise anywhere on the label much less by listing the Protein DRV as it is required to do, gave the average reasonable consumer no reason to suspect that Defendant's representations on the packages were not true, and therefore consumers had no reason to investigate where the Products actually do contain "7g Protein," "10g Protein," "11g Protein," and "12g Protein" per serving respectively. Thus, reasonable consumers relied on Defendant's representations regarding the nature of the Products.

49. Defendant intends and knows that consumers will and do rely upon food labeling statements in making their purchasing decisions. Label claims and other forms of advertising and marketing drive product sales, particularly if placed prominently on the front of product packaging, as Defendant has done with the claim that its protein pouches contain "7g Protein," "10g Protein," "11g Protein," and "12g Protein" per serving respectively.

**Defendant's Website and Other Marketing Confirms That Defendant Intends to Deceive Consumers**

50. Defendant's own advertising and marketing materials show that Defendant intended to deceive consumers into believing the false and deceptive packaging of the Products.

51. For example, Defendant's website located at https://www.fuelforfire.com/ ("Defendant's website") claims that its pouches contain "10-12g Protein" and are "Easy To Digest." Defendant's website encourages consumers to buy its Products, which it describes as smoothies, stating "[s]moothies are a no-brainer vehicle for meeting your daily protein intake requirements."

52. Defendant's website explains that its Products contain protein because protein "promotes muscle recovery", "strengthens immune system", "keeps you feeling full", "contains all 9 essential amino acids", and finishes by claiming that "each pack contains more protein than

1 egg." The website goes on to boast that "[m]ade with simple, clean ingredients, Fuel For Fire tastes great and is the ideal smart snack for kids, elite athletes, and everyone in between."

53. The "Why You'll Love Fuel For Fire" page of Defendant's website prominently displays three protein pouches with "10g Protein" and "12g Protein" displayed on the label and touts that "[o]riginal flavors contain 10-12grams of Whey Protein Isolate (the gold standard in whey protein). Are you Vegan or Dairy-Free? We have you covered with 3 Plant-Based Protein Flavors." A screenshot of Defendant's Website's "Why You'll Love Fuel For Fire" page appears below:





**Protein Smoothies**
### Ready to eat anytime

Fuel For Fire was developed as a way to get proper nutrition anywhere and anytime. All flavors have only 7-12 ingredients and nothing artificial. On the back of any nutrition label, the listing is ranked by prevalence and the first ingredient for Fuel For Fire is always REAL FRUIT.

Unlike protein bars, our smoothies digest easily and can be eaten before, during, and after exercise. Our delicious 6 Original flavors contain 10-12grams of Whey Protein Isolate (the gold standard in whey protein). Are you Vegan or Dairy-Free? We have you covered with 3 Plant-Based Protein Flavors. The smoothies taste great chilled, but no refrigeration is needed. Our products are endorsed by Registered Dietitians, Coaches, and Athletes across the country. Join the thousands of customers who choose our protein smoothies today!

54. Defendant's website encourages consumers to use its Products not only by ingesting the pouch directly, but also to use it in baking anything from brownies ("Protein brownies are now a thing") to ice cream ("healthy ways to stay cool and reach your daily protein goal") to pancakes ("Have your favorite breakfast treat now packed with protein!"). By promoting the use of its Products in baking foods, Defendant intends to lead consumers to believe that the foods that

otherwise lack nutritional value can now be a source of healthy nutrients to help reach their "daily protein goal."

55. In short, Defendant's advertising and marketing campaign confirms that Defendant intends that consumers be effectively deceived by its misrepresentations on the Products' labels. More specifically, Defendant intends that consumers who read the Products' labels believe that the Products contain the number of grams of protein listed on the front of the label.

**Defendant Misleadingly Markets Its Protein Pouches to Increase Profits and Gain a Competitive Edge**

56. Defendant's website explains its perceived competitive advantage, stating: "With over 75 different types of protein bars on the market, many people are looking for something new. Something that doesn't melt in your bag, get stuck to your teeth, or sit in your stomach like a brick."

57. In making false, misleading, and deceptive representations, Defendant distinguishes its protein pouches form its competitors' products. Defendant knew and intended that consumers would purchase, and pay a premium for, protein products labeled as having more protein than the Products actually contain over comparable protein sources that do not contain misleading representations on the product labels. Defendant's website states, "[u]nlike protein bars, our smoothies digest easily and can be eaten before, during, and after exercise." By using this branding and marketing strategy, Defendant is stating that its protein products are superior to, better than, and more nutritious and healthful than other forms of protein products that do not misrepresent the number of grams of protein on their labels.

**Defendant Intends to Continue to Market its Products as Containing More Protein than the Products Actually Contain**

58. Because consumers pay a price premium for protein supplement products that contain more protein, by labeling their Products as containing more grams of protein per serving than they actually contain, Defendant is able to both increase its sales and retain more profits.

59. Defendant engaged in the practices complained of herein to further their private interests of: (i) increasing sales of their Products while decreasing the sales of competitors that do not misrepresent the number of grams of protein contained in their products, and/or (ii) com-

manding a higher price for their Products because consumers will pay more for these protein pouches due to consumers' demand for products containing more protein.

60.     The market for protein products is continuing to grow and expand, and because Defendant knows consumers rely on representations about the number of grams of protein in their Products, Defendant has an incentive to continue to make such false representations.  In addition, other trends suggest that Defendant has no incentive to change its labeling practices.

61.     For example, one market analysis revealed that between 2013-2017 product launches with a protein claim grew 31%.[5]  Another analysis of the protein bar market, with which Defendant's products compete, projected a compound annual growth rate (CAGR) of 7.8 percent from 2017-2022.[6]

62.     To capitalize on the growing market, since 2012, Defendant has expanded its product line from only whey-based protein pouches, to plant-based protein pouches, to pouches for kids and has continued to replicate its misrepresentations on the new product lines.  Defendant continues to launch new product lines and flavors to diversify its portfolio to maintain its competitive edge, making it likely that Defendant will continue to misleadingly advertise its Products and perpetuate the misrepresentations regarding the number of grams of protein in its Products.

**PLAINTIFF'S EXPERIENCE**

63.     Plaintiff has purchased dozens of Defendant's Products from various Sprouts Farmers Markets, Targets, and Safeways throughout the East Bay in Northern California over the past year.  She typically purchased the flavors of Strawberry Banana, Tropical, and Sweet Potato Apple.

64.     Plaintiff made each of her purchases after reading and relying on the truthfulness of Defendant's product label that promised the Products contained "12g Protein" per serving of the Strawberry Banana flavor and "10g Protein" per serving of the Tropical and Sweet Potato Apple flavors.  She was attracted to the Products because, when given a choice, she prefers to buy

---

[5] https://www.bakeryandsnacks.com/Article/2018/11/26/10-key-snack-trends-to-watch?utm_source=copyright&utm_medium=OnSite&utm_campaign=copyright
[6] https://www.nosh.com/news/2018/new-formats-take-bite-protein-bar-market

quick and easy breakfast items that support her active physical fitness levels and high protein diet. But on each of the Products she purchased, Defendant misrepresented the protein contents of the Products as containing 25% more grams of protein than they actually contain.

65.    At the time of each of her purchases of the Products, Plaintiff did not know that the Products did not contain the amount of protein represented on the label.  As a result of Defendant's misrepresentations and omissions, the Products have no, or, at a minimum, a much lower value to Plaintiff.

66.    Plaintiff not only purchased the Products because their label said that they contained "10g Protein" and "12g Protein" per serving, respectively, but she also paid more money for the Products than she would have paid for other or a similar protein snack product that was not mislabeled regarding the number of grams of protein it contained.

67.    Had Defendant not misrepresented (by omission and commission) the true nature of the Products, Plaintiff would not have purchased them or, at a very minimum, she would have paid less for the Products.

68.    Plaintiff continues to desire to purchase protein products with "7g Protein," "10g Protein," "11g Protein," and "12g Protein" per serving respectively, including those marketed and sold by Defendant. If Defendant's Products were reformulated to contain the grams of protein that are represented on the label, Plaintiff would likely purchase Defendant's Products again in the future. Plaintiff regularly visits stores where Defendant's Products and other protein snack products are sold. Because Plaintiff does not know the formula for Defendant's products and cannot test whether or not the Products contain the amount of protein that is represented on the label, Plaintiff will be unable to rely on Defendant's labels when shopping for protein snack products in the future absent an injunction that prohibits Defendant from labeling its products with the incorrect number of grams of protein that each serving contains.  Should Defendant begin to market and sell a new line of products, Plaintiff could be at risk for buying another one of Defendant's products in reliance on the same or similar misrepresentation.

69.    Plaintiff and members of the Class have been economically damaged by their purchase of the Products because the advertising for the Products was and is untrue and/or

misleading under California law and the products are misbranded; therefore, the Products are worth less than what Plaintiffs and members of the Class paid for them and/or Plaintiffs and members of the Class did not receive what they reasonably intended to receive.

**CLASS ALLEGATIONS**

70. Plaintiff brings this class action lawsuit on behalf of herself and proposed classes of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiff seeks to represent the following groups of similarly situated persons, defined as follows:

> All persons in the State of California who purchased the Products between April 9, 2016 and the present.

71. This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

72. Numerosity: Plaintiffs do not know the exact size of the Class, but they estimate it is composed of more than 100 persons. The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

73. Common Questions Predominate: This action involves common questions of law and fact to the potential classes because each class member's claim derives from the deceptive, unlawful and/or unfair statements and omissions that led consumers to believe that the Products contained the amount of protein as represented on the Product labels. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover. The questions of law and fact common to the Class are:

> a. The true nature of the protein content in the Products;
>
> b. Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product are deceptive and/or unlawful because of misrepresentations;

c. Whether Defendant's actions violate Federal and California laws invoked herein;

d. Whether labeling the Products as containing more grams of protein than they actually contain causes the Products to command a price premium in the market as compared with similar products that do not make such misrepresentations;

e. Whether Defendant's advertising and marketing regarding the Products sold to the class members was likely to deceive reasonable consumers;

f. Whether representations regarding the number of grams of protein in the Products are material to a reasonable consumer;

g. Whether Defendant engaged in the behavior knowingly, recklessly, or negligently;

h. The amount of profits and revenues earned by Defendant as a result of the conduct;

i. Whether class members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and

j. Whether class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

74. Typicality: Plaintiff's claims are typical of the claims of other members of the Class because, among other things, all such claims arise out of the same wrongful course of conduct in which the Defendant engaged in violation of law as described herein. Further, the damages of each member of the Class were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

75. Adequacy of Representation: Plaintiff will fairly and adequately protect the interests of all class members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct of which they complain. Plaintiff also has no interests that are in conflict with, or antagonistic to, the interests of class members. Plaintiff has retained highly competent and experienced class action attorneys to represent her interests and that of the classes. By prevailing on her own claims, Plaintiff will establish Defendant's liability to all class members. Plaintiff and her counsel have the necessary

financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

76.     Superiority:  There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the classes will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

77.     Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

## PLAINTIFF'S FIRST CAUSE OF ACTION

### (Violation of the Consumers Legal Remedies Act (the "CLRA"), California Civil Code § 1750, *et seq.*)

78.     Plaintiff realleges and incorporates the paragraphs of this Class Action Complaint as if set forth herein.

79.     Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

80.     Plaintiff and other class members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

81. The Products that Plaintiff (and other similarly situated class members) purchased from Defendant were "goods" within the meaning of California Civil Code § 1761(a).

82. Defendant's acts and practices, set forth in this Class Action Complaint, led customers to falsely believe that the Products contained the amount of protein claimed on the product package. By engaging in the actions, representations and conduct set forth in this Class Action Complaint, Defendant has violated, and continue to violate, § 1770(a)(2), § 1770(a)(5), § 1770(a)(7), § 1770(a)(8), and § 1770(a)(9) of the CLRA. In violation of California Civil Code §1770(a)(2), Defendant's acts and practices constitute improper representations regarding the source, sponsorship, approval, or certification of the goods they sold. In violation of California Civil Code §1770(a)(5), Defendant's acts and practices constitute improper representations that the goods they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have. In violation of California Civil Code §1770(a)(7), Defendant's acts and practices constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code §1770(a)(8), Defendant has disparaged the goods, services, or business of another by false or misleading representation of fact. In violation of California Civil Code §1770(a)(9), Defendant has advertised goods or services with intent not to sell them as advertised. Finally, regarding California Civil Code §1770(a)(8), Defendant falsely or deceptively market and advertise that, unlike other protein snack manufacturers, it sells Products that contain more grams of protein than the Products actually contain. Further, Defendant failed to list the DRV of protein, as it was required to do.

83. Plaintiff requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the future, Plaintiff and the other members of the Class will continue to suffer harm.

84. Plaintiff provided Defendant with notice and demand that Defendant correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. Despite receiving the aforementioned notice and demand, Defendant failed

to do so in that, among other things, it failed to identify similarly situated customers, notify them of their right to correction, repair, replacement or other remedy, and/or to provide that remedy. Accordingly, Plaintiff seeks, pursuant to California Civil Code § 1780(a)(3), on behalf of herself and those similarly situated class members, compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendant's acts and practices.

85.    Plaintiffs also requests that this Court award their costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

## PLAINTIFF'S SECOND CAUSE OF ACTION
### (False Advertising, Business and Professions Code § 17500, *et seq.* ("FAL"))

86.    Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

87.    Beginning at an exact date unknown to Plaintiff, but within three (3) years preceding the filing of the Class Action Complaint, Defendant made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Products.

88.    Defendant made representations and statements (by omission and commission) that led reasonable customers to believe that the Products that they were purchasing contained more grams of protein per serving than the Products actually contained. Further, Defendant failed to list the DRV of protein, as it was required to do.

89.    Plaintiff and those similarly situated relied to their detriment on Defendant's false, misleading and deceptive advertising and marketing practices, including each of the misrepresentations and omissions set forth above.  Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant, she would have acted differently by, without limitation, refraining from purchasing Defendant's Products or paying less for them.

90.    Defendant's acts and omissions are likely to deceive the general public.

91.    Defendant engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits.  Accordingly, Defendant has engaged in false advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

92. The aforementioned practices, which Defendant used, and continues to use, to its significant financial gain, also constitutes unlawful competition and provides an unlawful advantage over Defendant's competitors as well as injury to the general public.

93. As a direct and proximate result of such actions, Plaintiff and the other class members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

94. Plaintiff seeks, on behalf of herself and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiff, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon.

95. Plaintiff seeks, on behalf of herself and those similarly situated, a declaration that the above-described practices constitute false, misleading and deceptive advertising.

96. Plaintiff seeks, on behalf of herself and those similarly situated, an injunction to prohibit Defendant from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which it is not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## PLAINTIFF'S THIRD CAUSE OF ACTION
### (Common Law Fraud, Deceit and/or Misrepresentation)

97. Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

98. Defendant has fraudulently and deceptively informed Plaintiffs that the Products

contain more grams of protein than they actually contain. Further, Defendant failed to list the DRV of protein, as it was required to do.

99.     These misrepresentations and omissions were known exclusively to, and actively concealed by, Defendant, not reasonably known to Plaintiff, and material at the time they were made. Defendant knew the composition of the Products, and knew that the Products did not contain the amount of protein represented on the label. Defendant's misrepresentations and omissions concerned material facts that were essential to the analysis undertaken by Plaintiff as to whether to purchase Defendant's Products. In misleading Plaintiff and not so informing Plaintiff, Defendant breached its duty to her. Defendant also gained financially from, and as a result of, its breach.

100.     Plaintiff and those similarly situated relied to their detriment on Defendant's misrepresentations and fraudulent omissions. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation: (i) declining to purchase the Products, (ii) purchasing less of them, or (iii) paying less for the Products.

101.     By and through such fraud, deceit, misrepresentations and/or omissions, Defendant intended to induce Plaintiff and those similarly situated to alter their position to their detriment. Specifically, Defendant fraudulently and deceptively induced Plaintiff and those similarly situated to, without limitation, purchase the Products.

102.     Plaintiff and those similarly situated justifiably and reasonably relied on Defendant's misrepresentations and omissions, and, accordingly, were damaged by Defendant.

103.     As a direct and proximate result of Defendant's misrepresentations and/or omissions, Plaintiff and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Products.

104.     Defendant's conduct as described herein was wilful and malicious and was designed to maximize Defendant's profits even though Defendant knew that it would cause loss and harm to Plaintiff and those similarly situated.

## PLAINTIFF'S FOURTH CAUSE OF ACTION
### (Unlawful, unfair, and fraudulent trade practices violation of Business and Professions

**Code § 17200, *et seq.*)**

105.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

106.     Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendant has engaged, and continues to engage, in unlawful, unfair, and fraudulent trade practices in California by engaging in the unlawful, unfair, and fraudulent business practices outlined in this complaint.

107.     In particular, Defendant has engaged, and continues to engage, in unlawful practices by, without limitation, violating the following state and federal laws: (i) the CLRA as described herein; (ii) the FAL as described herein; (iii) the advertising provisions of the Sherman Law (Article 3), including without limitation, California Health & Safety Code §§ 110390, 110395, 110398 and 110400; (iv) the misbranded food provisions of the Sherman Law (Article 6), including without limitation, California Health & Safety Code §§ 110660, 110665, 110705, 110760, 110765, and 110770; and (v) and federal laws regulating the advertising and branding of food in 21 U.S.C. § 343(a), *et seq.* and FDA regulations, including but not limited to 21 C.F.R. 21 C.F.R. § 101.9 (c)(7), which are incorporated into the Sherman Law (California Health & Safety Code §§ 110100(a), 110380, and 110505).

108.     In particular, Defendant has engaged, and continues to engage, in unfair and fraudulent practices by, without limitation, the following: (i) misrepresenting that the Products contain more grams of protein than they actually contain; and (ii) failing to list the Protein DRV as required by FDA regulations.

109.     Plaintiff and those similarly situated relied to their detriment on Defendant's unlawful, unfair, and fraudulent business practices. Had Plaintiff and those similarly situated been adequately informed and not deceived by Defendant, they would have acted differently by, without limitation: (i) declining to purchase the Products, (ii) purchasing less of the Products, or (iii) paying less for the Products.

110.     Defendant's acts and omissions are likely to deceive the general public.

111.     Defendant engaged in these deceptive and unlawful practices to increase their profits. Accordingly, Defendant has engaged in unlawful trade practices, as defined and

prohibited by section 17200, *et seq.* of the California Business and Professions Code.

112. The aforementioned practices, which Defendant has used to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

113. As a direct and proximate result of such actions, Plaintiff and the other class members, have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiff and the class members lost the amount they paid for the Products.

114. As a direct and proximate result of such actions, Defendant has enjoyed, and continues to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

115. Plaintiff seeks, on behalf of themselves and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiff, the general public, or those similarly situated by means of the deceptive and/or unlawful trade practices complained of herein, plus interest thereon.

116. Plaintiff seeks, on behalf of those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

117. Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendant from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which they were not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## PLAINTIFF'S FOURTH CAUSE OF ACTION
### (Unjust Enrichment)

118.    Plaintiff realleges and incorporates by reference all paragraphs alleged herein

119.    Plaintiff and members of the Class members conferred a benefit on the Defendant by purchasing Fuel for Fire Products

120.    Defendant has been unjustly enriched in retaining the revenues from Plaintiff's and Class Member's purchases of the Products, which retention is unjust and inequitable, because Defendant falsely represented that the Products contained specific amounts of protein per serving, when, in fact, the Products contained approximately 25% less protein than represented. This harmed Plaintiff and members of the class because they paid a price premium as a result.

121.    Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for its unjust enrichment, as ordered by the Court.

122.    Plaintiff, therefore, seeks an order requiring Defendant to make restitution to her and other members of the Class

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and those similarly situated, respectfully requests that the Court enter judgment against Defendant as follows:

A.  Certification of the proposed Class, including appointment of Plaintiff's counsel as class counsel;

B.  An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.  An award of compensatory damages in an amount to be determined at trial;

D.  An award of statutory damages in an amount to be determined at trial;

E.  An award of punitive damages in an amount to be determined at trial;

F.  An award of treble damages;

G.  An award of restitution in an amount to be determined at trial;

H.  An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

I.  For reasonable attorney's fees and the costs of suit incurred;

J.  For such further relief as this Court may deem just and proper;

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 9, 2020                    **GUTRIDE SAFIER LLP**

/s Seth A. Safier
Adam J. Gutride, Esq.
Seth A. Safier, Esq.
Marie McCrary, Esq.
Hayley Reynolds, Esq.
100 Pine Street, Suite 1250
San Francisco, CA 94111

DocuSign Envelope ID: 82D8DE0F-CFEE-48FC-9C67-94B85AE9E244

**EXHIBIT A**

I, Sherris Minor, declare:

1.      I am the Plaintiff in this action.  If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.      I submit this Declaration pursuant to California Code of Civil Procedure section 2215.5 and California Civil Code section 1780(d).

3.      As set forth in my complaint, over the last four years, I purchased a number of Fuel for Fire pouches from Target, Safeway, and Sprouts stores in Pleasant Hill, California; Emoryville, California; and Oakland, California.

4.      I later learned that the Fuel for Fire I purchased did not contain the amount of protein represented on the label.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this __1st__ day of April 2020, in ___San Francisco___, California.

DocuSigned by:

*Sherris Minor*

D79A350061E74A7

Sherris Minor

MINOR DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION